IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANTHONY MANN, DANA MOYE,                )
and KATINA MCGEE,                       )
                                        )
                    Plaintiffs,         )
                                        )
v.                                      )        Case No. 16-2196-CM
                                        )
XPO LOGISTICS FREIGHT, INC.,            )
f/k/a CON-WAY TRANSPORTATION            )
SERVICES, INC.,                         )
f/k/a CON-WAY FREIGHT INC.,             )
                                        )
                    Defendant.          )

## <u>ORDER</u>

Plaintiffs are truck drivers who bring this employment-discrimination suit against their former employer, defendant XPO Logistics Freight, Inc., alleging they were subject to discrimination, harassment, and retaliation because of their race, age, and/or sex.  A number of discovery disputes have arisen between the parties, some of which are now before the court.  Defendant has filed a motion to compel plaintiffs Anthony Mann and Dana Moye to fully respond to defendant's second request for production of documents (ECF No. 98).  Plaintiffs have filed a motion to compel defendant to fully respond to each plaintiff's opening interrogatories and first requests for production of documents (ECF No. 107).  For the reasons discussed below, each motion is granted in part and denied in part.

## I.      Factual Background

Mann, Moye, and the third plaintiff, Katina McGee, were each employed at defendant's Kansas City, Kansas facility as a "driver sales representative" ("DSR").  Mann, an African-American male, was terminated in June 2015, after about six years of employment.  He alleges that during his time at XPO, Caucasian employees were given preferential treatment and assignments, and opportunities to advance that were not given minority DSRs.  He further alleges DSR supervisors called minority DSRs derogatory names.  Mann states the supervisors engaged in a pattern and practice of racial discrimination, and that defendant fostered a hostile work environment.  Mann asserts he was terminated for making numerous internal complaints about XPO's racial discrimination and unfair employment practices.

Moye is an African-American male, over the age of fifty, who was employed by defendant for nearly nineteen years until he was terminated in April 2016.  Moye alleges he was subjected to years of racial harassment by other DSRs and that defendant took no action when he complained.  Like Mann, Moye alleges Caucasian DSR's were given preferential treatment, assignments, and opportunities to advance, and that defendant's representatives engaged in a pattern and practice of intentional racial discrimination and harassment.  Moye also alleges he was harassed and not given job opportunities because of his age.  Moye contends defendant terminated him in retaliation for his complaints of racial and age-based discrimination and harassment.

McGee is an African-American female who worked for defendant for two-and-a-half years until she was terminated in April 2016.  She alleges racial discrimination, harassment, and retaliation, as well as a pattern and practice of such, by defendant, all along the same lines as alleged by Mann and Moye.  In addition, she alleges she was harassed and treated unfairly because of her sex.  McGee asserts defendant fostered a hostile and abusive work environment.  McGee contends defendant terminated her in retaliation for her complaints of racial and sexual discrimination and harassment.

## II.    Legal Standards

Fed. R. Civ. P. 26(b)(1) allows parties to "obtain discovery regarding any non-privileged matter that is *relevant* to any party's claim or defense and *proportional* to the needs of the case."[1]  Relevance, at the discovery stage, is broadly construed.[2]  "[A]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" will be deemed relevant.[3]  Proportionality is to be determined by

---

[1]Fed. R. Civ. P. 26(b)(1) (emphasis added).

[2]*See Erickson, Kernell, Deruseau, & Kleypas v. Sprint Sols., Inc*., No. 16-mc-212-JWL-GEB, 2016 WL 3685224, at *4 (D. Kan. July 12, 2016).

[3]*Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) and ruling the *Oppenheimer* standard still relevant after the 2015 amendment to Rule 26(b)(1)).  *See also Waters v. Union Pac. R.R. Co.*, No. 15-1287-EFM-KGG, 2016 WL 3405173, at *1 (D. Kan. June 21, 2016) ("Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." (internal quotations and citation omitted)).

considering, to the extent applicable, the following six factors: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.[4]

Fed. R. Civ. P. 37(a) permits parties to "move for an order compelling disclosure or discovery." The burden is generally placed on the party resisting discovery to demonstrate that the discovery should not be had.[5] "If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless the court finds the opposing party's nondisclosure, response, or objection was "substantially justified" or that "other circumstances make an award of expenses unjust."[6] "A nondisclosure, response, or objection is 'substantially justified' if it is 'justified to a

---

[4]Fed. R. Civ. P. 26(b)(1).

[5]*See, e.g., Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 211 (D. Kan. 2002) ("When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance. . . .").

[6]Fed. R. Civ. P. 37(a)(5)(A).

degree that could satisfy a reasonable person' or where 'reasonable people could differ as to the appropriateness' of the nondisclosure, response, or objection."[7]

## III.     Defendant's Motion to Compel (ECF No. 98)

Defendant's motion to compel asks the court to mandate plaintiffs' responses to three document requests.

Requests Directed to Moye.  Two of the requests were directed to Moye: Request No. 19 sought documents related to Moye's income subsequent to his employment with defendant, and Request No. 22 sought Moye's medical records evidencing the physical, mental, or emotional harm he allegedly suffered as a result of defendant's actions.  The motion noted that, as late as April 14, 2017, Moye had promised to produce the responsive documents as soon as he received them from his accountant and medical providers, respectively.  Nevertheless, defendant included Request Nos. 19 and 22 in its motion filed on May 8, 2017.  On May 18, 2017, Moye produced his responsive financial and medical records.  Defendant's reply brief states defendant "accepts" that Moye has now fully responded to Request Nos. 19 and 22.[8]  The motion to compel therefore is denied as moot with regard to these two requests.

---

[7]*Linnebur v. United Tel. Ass'n*, No. 10-1379-RDR, 2012 WL 1183073, at *1 (D. Kan. Apr. 9, 2012) (internal citations omitted); *see also Hamner v. Assoc. Wholesale Grocers, Inc.*, No. 07-2314-KHV-DJW, 2008 WL 917900, at *2 (D. Kan. March 31, 2008) (internal citations omitted).

[8]ECF No. 108 at 2 n.3.

Request Directed to Mann.  The third document request discussed in the motion remains at issue.  Request No. 18 was directed to Mann and sought his e-mails, text messages, and phone-usage records for May 17, 2015, through June 17, 2015 (i.e., the month preceding his termination).  One of the reasons given by defendant for terminating Mann was Mann's use of his cellphone during work hours.  Mann's response to Request No. 18 asserted objections, but then stated, "These documents were already produced on December 10, 2016."[9]  It is undisputed Mann produced four pages of e-mails from the time frames June 1-4, 2015, and June 16-17, 2015.

In an April 3, 2017 meet-and-confer discussion, Mann agreed to produce additional documents.  On April 21, 2017, defendant provided Mann a log of the time he was clocked-in during the one-month period, and asked Mann to produce the additional responsive documents by April 28, 2017.  Mann did not produce additional responsive documents before defendant filed its motion on May 8, 2017.  During a telephone conference between counsel on May 19, 2017, plaintiffs' counsel informed defense counsel that Mann's cellphone account is controlled by Mann's estranged wife, and that Mann had tried to retrieve the requested documents from her but was unsuccessful.  The parties agreed defendant would issue a subpoena to Mann's wife to obtain the records.

In defendant's June 5, 2017 reply brief, defendant recognizes the issuance of the subpoena, but asserts Mann has not addressed his "lack of production regarding the

---

[9]ECF No. 98-2.

documents sought in Request No. 18 that are in his own possession, such as emails, text messages, and phone call logs which are retrievable from the phone itself."[10]  Accordingly, to the extent it is within Mann's control to retrieve responsive documents via the cellphone in his possession, the motion to compel is granted.[11]

Fees and Costs.  Defendant seeks its fees and costs incurred in bringing the motion to compel under Fed. R. Civ. P. 37(a)(5)(A).  The court is satisfied, however, that plaintiffs' delayed production of documents was substantially justified given the circumstances discussed above.[12]  Although, of course, there are times when it becomes necessary for a party to move to compel production when an opposing party continuously delays producing discovery it has promised to provide, the situation here was different.  Here, plaintiffs were

---

[10]ECF No. 108 at 2.

[11]In a document titled "defendant's notice of supplemental authority" (ECF doc. 109), filed after briefing had concluded on this motion and without leave of court, defendant suggests, "Mann may be directed by the Court to obtain responsive email messages directly from the email service providers or, alternatively, execute a consent for such messages to be subpoenaed from the email service providers, should Plaintiff Mann no longer have them in his possession."  Defendant, however, never sought this form of relief in its motion to compel, and the court can find no indication in the record that defense counsel discussed this possibility with plaintiffs' counsel pursuant to D. Kan. Rule 37.2.  While obtaining e-mail messages directly from Mann's e-mail service providers *might* be a viable option (assuming, of course, Mann believes e-mails exist in addition to the four pages already produced), the court will not order it on the state of the current record.

[12]*Linnebur*, 2012 WL 1183073, at *1 ("A nondisclosure, response, or objection is 'substantially justified' if it is 'justified to a degree that could satisfy a reasonable person' or where 'reasonable people could differ as to the appropriateness' of the nondisclosure, response, or objection.").

actively attempting to obtain responsive documents and the parties' were openly and regularly communicating about plaintiffs' outstanding discovery.[13]  Defendant's request for fees and costs therefore is denied.

## IV.     Plaintiffs' Motion to Compel (ECF No. 107)

Plaintiffs' motion to compel is a bit hard to follow, as it first lists numerous individual interrogatories and requests for production of documents at issue, and then separately puts forth plaintiffs' legal arguments, but does not indicate which legal arguments correspond to which specified requests/interrogatories, or whether those legal arguments apply beyond or in addition to the specified requests/interrogatories.  Defendant's response is of little more help, as it does not include a single citation to legal authority.  Moreover, though defendant made certain objections in its responses to plaintiffs' discovery requests, some of which likely would have been upheld, they are deemed abandoned where defendant did not reassert them in response to the motion to compel.[14]

---

[13]*See* ECF Nos. 98-5 and 98-6.

[14]*See Kannaday v. Ball*, 292 F.R.D. 640, 644 (D. Kan. 2013) (ruling "objections initially raised but not supported in the objecting party's response to the motion to compel are deemed abandoned"); *Cardenas v. Dorel Juvenile Grp.*, 230 F.R.D. 611, 615 (D. Kan. 2005) ("When ruling upon a motion to compel, the Court will consider only those objections that have been (1) timely asserted, and (2) relied up in response to the motion to compel. Objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned."); *Sonnino v. Univ. of Kan. Hosp. Auth.,* 220 F.R.D. 633, 656 (D. Kan. 2004) ("[A] court will consider only those objections that have been timely asserted in the initial response to the discovery request and subsequently reasserted and relied upon in response to the motion to compel.").

Signature of Person Answering Interrogatories.  Plaintiffs' object that defendant's interrogatory responses are not "signed under oath by the person(s) making the answers as required by [Fed. R. Civ. P.] 33."[15]  The Tenth Circuit has held that when an answering party is a corporation, it is "entirely acceptable" for the party's attorney to swear to the accuracy of the interrogatory answers.[16]  Here, defendant's attorney signed each set of  answers, but his signatures were not accompanied by his verification or affidavit attesting to the accuracy of the answers.  Defendant is therefore ordered to provide an affidavit, by its attorney or other authorized representative, signed under oath and attesting to the accuracy of the answers.[17]

Contention Interrogatories.  A number of plaintiffs' interrogatories ask defendant to identify the facts, documents, and witnesses that support its asserted defenses.[18]  Such so-called "contention interrogatories" are permitted by Fed. R. Civ. P. 33(a)(2).[19]  Defendant

---

[15]ECF No. 107 at 4.

[16]*Rea v. Wichita Mortg. Corp.*, 747 F.2d 567, 574 n.6 (10th Cir. 1984).

[17]*See Unified Sch. Dist. 467 v. Gray Architects, LLC*, No. 14-1025-KHV, 2016 WL 2727281, at *4 (D. Kan. May 6, 2016) (granting motion to compel responses to interrogatories and requiring supplemental responses to "be verified under oath by an authorized representative of [the corporate defendant], as required by Rule 33").

[18]ECF No. 107-2: Mann's Opening Interrogatory Nos. 19–24, Moye's Opening Interrogatory Nos. 9–24, and McGee's Opening Interrogatory Nos. 9–25.

[19]*See Lykins v. Certain Teed Corp.*, No. 11-2133-JTM, 2012 WL 3578911, at *8 (D. Kan. Aug. 17, 2012).

answered these interrogatories, in large part, by referring plaintiffs to specific bates-stamped documents.[20]  Plaintiffs' motion objects to this practice, arguing,

> [T]he defendant failed and still refuses to identify any principal or material facts, witnesses, or documentation for its defenses.  The documentation that defendant produced also are not, "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Rule 33(d).[21]

Defendant's response to the motion did not address this argument or otherwise offer support for its responses to the contention interrogatories.[22]

Rule 33 gives parties responding to interrogatories the option, in some circumstances, of producing business records as a method of answering an interrogatory.  Specifically, "[i]f the answer to an interrogatory may be determined by" reviewing business records, "and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by specifying the records that must be reviewed."[23]  This court has recognized, however, that "the option to produce business records would rarely constitute an appropriate response for contention interrogatories because contention

---

[20]ECF No. 107-2: Mann's Opening Interrogatory Nos. 19–24, Moye's Opening Interrogatory Nos. 9–24, and McGee's Opening Interrogatory Nos. 9–25.

[21]ECF No. 107 at 8-9.

[22]To the extent defendant occasionally asserted an objection to one of these interrogatories as premature, presumably under Rule 33(a)(2), defendant waived that argument by not re-asserting it in response to the motion to compel.

[23]Fed. R. Civ. P. 33(d).

interrogatories, by their very nature, seek information regarding a party's opinion or contention.  It is difficult to see how business records would provide this information."[24] Defendant does not address this caselaw.  Accordingly, and in the absence of any explanation from defendant as to how the documents cited in each response to a contention interrogatory fully answer that interrogatory, the motion is granted in this regard and defendant is ordered to supplement its responses to contention interrogatories with written responses.

  Identity of Person "Assisting" Defendant in Answering Interrogatories.  Mann's Interrogatory No. 2, Moye's Interrogatory No. 1, and McGee's Interrogatory No. 1 asked defendant to "[i]dentify each person who assisted you in answering these interrogatories."[25] Defendant identified its counsel in response to each.  Plaintiffs argue this "response is evasive, as it does not identify each person who provided information in answering the interrogatories."[26]  The court rejects this argument.  Defendant answered the question asked.

---

[24]*Unified Sch. Dist. 467*, 2016 WL 2727281, at *2; *see also S.E.C. v. Kovzan*, No. 11-2017-JWL, 2012 WL 3111729, at *2 (D. Kan. July 31, 2012) ("The option to produce business records would not often completely satisfy a contention interrogatory because contention interrogatories by their very nature seek information about the responding party's opinion or contention with regard to the facts or application of the law to the facts.  It is difficult to see how business records could adequately answer this inquiry."), partially overturned on other grounds, 2012 WL 4819011 (D. Kan. Oct. 10, 2012); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB, 2007 WL 2668742, at *8 (D. Kan. Sept. 6, 2007) ("Nor can Heartland simply 'incorporate' other documents such as its response to Aetna's summary judgment motion and its expert reports as a means of answering the contention interrogatories.").

[25]ECF No. 107-2 at 3, 23, & 40.

[26]ECF No. 116 at 4.

The identical interrogatories did not ask for the information plaintiffs apparently now seek, i.e., the identity of each officer or agent of the corporation who answered on defendant's behalf.  This portion of plaintiffs' motion is denied.

  <u>Persons from Whom Statements or Factual Memoranda Were Obtained</u>.  Mann's Interrogatory No. 9 asked defendant for the "names, addresses, and telephone numbers of all persons from whom anyone . . . has obtained statements or factual memoranda . . . pertaining to the facts related in any way" to the claims in this case, and for each, "furnish a brief description of the statements or memoranda sufficient to identify it."[27]  Defendant answered by referring Mann to 259 bates-stamped pages of documents "from which the Answer to this Interrogatory, to the extent known by Defendant, can be ascertained."[28]  Defendant also supplemented its answer with a list of hundreds of employees and past management personnel no longer employed by defendant, as well as their addresses and telephone numbers.

  Plaintiffs argue "[p]roviding a list of hundreds of names and documents does not provide a sufficient response to Interrogatory No. 9, nor does it satisfy rule 33."[29]  As noted above, Rule 33(d) permits a responding party to produce business records in response to an interrogatory "*[i]f* the answer to an interrogatory may be determined by" reviewing the

---

[27]ECF No. 107-2 at 6.

[28]*Id.* at 7.

[29]ECF No. 116 at 4.

business records, "*and if* the burden of deriving or ascertaining the answer will be substantially the same for either party."[30]  "To comply with Rule 33(d)'s option to produce business records, the responding party must not only specifically designate which records answer the interrogatory, but the records specified must actually contain the information sought by the interrogatory.  In other words, a party does not comply with this provision by generally identifying large categories of documents . . . ."[31]

Under these standards, the court is inclined to agree with plaintiffs that defendant's designation of 259 pages of documents did not satisfy Rule 33(d).  But plaintiffs have provided the court no argument or evidence from which the court can definitively make such a holding.  For example, plaintiffs do not state whether Rule 33(d) was not met because certain documents specified do not contain information sought by Interrogatory No. 9, or whether the rule was not satisfied because the burden of ascertaining the answer to the interrogatory from the documents would fall more heavily on plaintiffs, or for both of these reasons, or for a reason entirely different.  Nor have plaintiffs included in the record any of the documents defendant identified.  Thus, for example, the court cannot say whether all of the documents identified meet the requirement that they contain information sought by the interrogatory.   The court cannot grant plaintiffs relief based on their conclusory allegation alone, so the court denies the motion as to Mann's Interrogatory No. 9.

---

[30]Fed. R. Civ. P. 33(d) (emphasis added).

[31]*Unified Sch. Dist. 467*, 2016 WL 2727281, at *1.

Defendant's Financial Information/Tax Returns.  Mann's Interrogatory Nos. 11-13 sought information about defendant's gross income for the past five years, current net worth, and "recent" financial statements.[32]  Mann's First Request For Production of Documents ("Request") Nos. 11-12 sought copies of defendant's tax returns and financial statements for the years 2012-2016.  Plaintiffs state such financial information is relevant to their claims for punitive damages.  In responding to the motion to compel, defendant's only argument is that "Plaintiffs have provided no explanation for why" defendant's financial statements available on defendant's public website are "insufficient."[33]

Defendant has not challenged (at least not in response to the motion to compel) the relevance of its financial information, and the court agrees with plaintiffs that the information is relevant to the issue of punitive damages.  Thus, the burden falls on defendant "to show that other sources exist from which the information is readily obtainable."[34]  Although it may be the case that the information on defendant's website *would* provide the information sought in each of the three interrogatories and two requests, defendant has presented the court no argument or evidence in an attempt to make this showing.  Because defendant has failed to

---

[32]ECF No. 107-2 at 8-9.  Defendant stretches the truth in stating plaintiffs seek financial statements for "an unlimited time frame."  ECF No. 110 at 3.

[33]ECF No. 110 at 3, 9–10.

[34]*See, e.g., Hilt v. SFC Inc.*, 170 F.R.D. 182, 189 (D. Kan. 1997) ("The party seeking production [of tax returns] has the burden of showing relevancy, and once that burden is met, the burden shifts to the party opposing production to show that other sources exist from which the information is readily obtainable." (internal quotations and citation omitted)).

meet its burden, plaintiffs' motion to compel as to these interrogatories and requests is granted.

Persons Responsible for Developing Defendant's Non-Discrimination Procedures and Policies.  Plaintiffs ask the court to compel defendant to respond to Mann's Interrogatory No. 16, which sought the name, address, and telephone number of each person responsible for developing each of defendant's procedures and policies about avoiding racial discrimination in the workplace.   Defendant responds that the responsible persons are management personnel that are either currently employed at XPO such that plaintiffs' counsel may not contact them directly, or are former employees whose contact information was produced in response to a separate interrogatory.   This response is evasive.   It does not answer the question asked in Interrogatory No. 16.  And if it is an objection to providing the information requested by Interrogatory No. 16, it is rejected because it was never raised in defendant's response to the interrogatory.[35]   Plaintiffs' motion to compel as to this interrogatory is granted.

Defendant's Provision of Mental Health Services in the Workplace.   Mann's Interrogatory No. 17 sought information about defendant's "procedures and programs . . . for providing mental health services for your employees in your workplace."[36]  Mann's Request

---

[35]*Allen v. Mill-Tel, Inc.*, 283 F.R.D. 632, 633 (D. Kan. 2012) (stating, "the court will deem waived any objections not asserted in the initial response to a discovery request but raised in a response to a motion to compel").

[36]ECF No. 107-2 at 16.

No. 10 sought copies of such procedures and programs.  In response to the motion to compel, defendant asserts that such mental health information is not relevant to Mann's claims.  As the court noted above, relevance is broadly construed at the discovery stage.[37]  "[A]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" will be deemed relevant.[38]  The court finds information about defendant's provision of mental-health services (if any) relevant to Mann's claim for emotional distress.  Plaintiffs' motion to compel is granted in this regard.

Surveillance Equipment.  Moye's Interrogatory No. 5 sought a description of "all cameras, listening devices and other surveillance equipment installed at every XPO Logistics terminal since January 1, 2010," as well as the location and custodian of any resulting recordings.  Plaintiffs later limited this interrogatory to defendant's Kansas City terminal.[39] Defendant argues the information sought is not relevant because such devices "have nothing whatsoever to do with Plaintiff Moye's employment or the reasons for his termination."[40] Defendant further argues, "[t]he burden of compiling the information requested in this

---

[37]*See Erickson, Kernell,* 2016 WL 3685224, at *4.

[38]*Rowan*, 2016 WL 3745680, at *2.

[39]ECF No. 116 at 6.

[40]ECF No. 110 at 5.

Interrogatory would clearly and substantially exceed any possible evidentiary value to be gained from such information."[41]

Under the liberal relevance standards set forth above, the court finds that a description of the surveillance equipment operating in defendant's Kansas City terminal from 2010 until the date on which Moye was terminated in 2016[42] could lead to information that could bear on an issue in the case. For example, Moye has alleged he was subjected to years of racial harassment by other DSRs and that defendant took no action when he complained. He further alleged XPO managers called him derogatory, age-based terms, such as "old fart" and "old guy." Information defendant provides about the surveillance equipment and its recordings could lead plaintiffs to obtain the recordings, which may reflect the actions of defendant's employees that Moye relies on in support of his race and age discrimination claims.

Defendant's burdensome argument appears misguided and, in any event, is not supported. First, defendant characterizes this interrogatory as requesting a "massive amount of data."[43] It appears defendant may be misinterpreting the interrogatory as seeking the actual recordings from the devices, which it does not. But even if defendant views the

---

[41]*Id.*

[42]Plaintiffs have not suggested information after this date is relevant to Moye's claims. Thus, the court sets it as the outer temporal limit.

[43]ECF No. 110 at 5.

interrogatory as written as requiring the production of a massive amount of data, defendant has not met its burden of showing the time and expense that would be involved in responding to the interrogatory would be unreasonable.  "Any objections that discovery is unduly burdensome must contain a factual basis for the claim, and the objecting party must usually provide an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."[44]  Defendant has not offered an affidavit or any evidentiary proof to support its objection that producing the information responsive to Interrogatory No. 5 would be unduly burdensome.  Nor has defendant offered any detail as to the time, money, and procedure that would be required to respond.  Accordingly, defendant's objections are overruled, and plaintiffs' motion to compel as to this interrogatory is granted.

Promotions, Advancements, and Pay Increases Offered to Moye and McGee. Moye's Interrogatory No. 6 asked defendant to describe promotions, advancements, and pay increases offered to Moye during his employment at XPO, including the identity of any person involved in making the offer.  McGee's Interrogatory No. 5 sought identical information with respect to McGee.

---

[44]*Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 626 (D. Kan. 2014) (internal quotation marks and citation omitted).  *See also*, *Fish v. Kobach*, Nos. 16-2105-JAR-JPO, 15-9300-JAR-JPO, 2016 WL 893787, at *1 (D. Kan. March 8, 2016) ("Objections based on undue burden must be clearly supported by an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.").

In response, defendant directed plaintiffs to the bates-stamped personnel records that defendant had previously provided.  Defendant states these records reflect Moye's and McGee's position (they each held only the DSR position during their employment) and pay. Although that may be true, plaintiffs note that defendant has not identified the *persons involved* in offering any promotions, advancements, or pay increases to Moye and/or McGee. Because defendant does not address this deficiency, plaintiffs' request to compel this information is granted and defendant shall supplement its answers to these two interrogatories.

Identity of Defendant's Corporate Officers.  In Interrogatory No. 8, Moye asked defendant to identify its corporate officers since 2010.  Defendant objects on relevance grounds, arguing the officers have no relation to Moye's claims of discrimination and retaliation. Again, given the broad construction of relevancy at the discovery stage, this objection is overruled.  Defendant's corporate officers may have information about defendant's discrimination policies and/or any practices of discrimination at the Kansas City facility.  To the extent defendant also objects on the basis that the burden of providing this information is not proportional to the needs of the case, defendant has again failed to present evidentiary support or detailed argument to demonstrate burden.  Accordingly, defendant's objections are overruled, and plaintiffs' motion to compel an answer to this interrogatory is granted.

<u>Reports Made By McGee to XPO Management</u>.  In his Interrogatory No. 4, McGee asked defendant to identify each person with possession, custody, or control of any report (original or copy) McGee made to a member of defendant's management.  In response to plaintiffs' motion to compel, defendant argues that it produced the reports and that the reports themselves reflect the names of persons to whom they were submitted.  As plaintiffs note, however, this interrogatory seeks the identity of persons *possessing* the reports, not the identities of persons to whom the reports were submitted.  Defendant is therefore ordered to supplement its response to address the question actually asked.  Plaintiffs' motion to compel is granted in this respect.

<u>Dispatch Records for McGee</u>.  McGee's Interrogatory No. 8 sought "each date on which plaintiff McGee was dispatched after a Caucasian male DSR with less seniority was dispatched," and the identity of the person making the dispatch decision.[45]  In its response to the motion to compel, defendant objects on burdensome grounds, asserting that because it does not maintain records of dispatch times in relation to seniority,[46] "any attempt at identifying information in response to this Interrogatory would require an extensive and highly labor-intensive search of voluminous dispatch records and employment files."[47]

---

[45]ECF No. 107-2 at 44.  The interrogatory also sought the reasons for the order of dispatch, but plaintiffs do not discuss that request in their motion to compel.

[46]Defendant does not dispute McGee's assertion that dispatchers maintain a sheet of dispatch times that reflect the order of dispatch.  *See* ECF No. 107 at 6.

[47]ECF No. 110 at 7.

Because defendant has again failed to support its burdensome argument with evidentiary proof or a detailed explanation of the time, money, and procedure that would be involved in responding, defendant's objection is overruled.  When responding to this interrogatory, however, defendant need only review its dispatch records for the dates and times specified in the Amended Complaint as days on which a DSR with less seniority allegedly was dispatched before McGee.[48]

Documents Reflecting the Wages, Working Conditions, and Treatment of DSRs. Plaintiffs move to compel defendant to produce documents reflecting the wages, working conditions, and treatment of all DSR's employed in defendant's Kansas City facility for the years 2012-2016, as requested in Mann's Request Nos. 18-23 and 25.[49]  Plaintiffs state this information is relevant to support Mann's claims that Caucasian DSR's received better routes (for which they were compensated at a higher rate) than African American DSRs, and that defendant "had a pattern and practice of discrimination based on race through the truck assignments, denial/acceptance of time off requests, withholding wages, and punishment practices."[50]  Defendant responds that "the nature of the information requested, such as all

---

[48]ECF No. 107 at 6.

[49]*See* ECF No. 116, at 8-9, limiting the information sought to the Kansas City facility.

[50]*Id.* at 9.

documents regarding time off requests, holiday pay, etc., for all employees over multiple years, still means that it would take a veritable army to gather all of the documents."[51]

Although defendant may have a valid concern, it has again failed to support its burdensome objection with an affidavit, other evidentiary support, or a detailed discussion of the time and expense that would be involved in responding to the requests. Thus, defendant's objection that these requests are unduly burdensome must be overruled. Plaintiffs' motion to compel is granted as to these requests.

Records of Former Terminal Manager Jeff Vogavich. In Moye's Request No. 13, Moye sought "[a]ll documents pertaining to former terminal Manager Jeff Vogavich."[52] Vogavich was the terminal manager in 1999 when, as alleged in Moye's complaint, "Moye witnessed nooses hanging in defendant's public facilities including, but not limited to: the driver's room, the break room, the cafeteria, and the bathroom; [and] plaintiff Moye found a noose on the front seat of his truck."[53] Moye allegedly reported these incidents to Vogavich.

---

[51]ECF No. 127 at 3. Defendant also states, "[g]iven the prodigious scope and generalized phrasing of these requests, Defendant submits that it should not be compelled to respond." ECF No. 110 at 8. To the extent this is meant to assert an objection based on overbreadth, defendant does not support it with analysis or citation of law, and it is therefore rejected.

[52]ECF No. 107-1. The parties seem to have limited the request to Vogavich's personnel file, rather than "all documents."

[53]ECF No. 41 at ¶ 110.

In response to the motion to compel, defendant objects that Request No. 13 is "beyond the scope of discovery in this action" because defendant is unaware of any allegations pertaining to Vogavich that would not be time barred.[54]  It is unclear to the court what defendant means by "beyond the scope of discovery."  Presuming this is an objection based on relevance, it is overruled.  It is reasonably possible that the information in Vogavich's personnel file could support Moye's timely claims or lead to other matter that could support those claims.  Defendant has presented no evidence to the contrary.[55]  Plaintiffs' motion to compel is granted as to this request.

<u>Litigation Over Interference with Pension Rights</u>.  Plaintiffs next move to compel, in response to Moye's Request No. 16, all documents relating to litigation (presumably against defendant) in 2012-2016 pertaining to interference with the pension rights of any employee.  In response to the motion, defendant objects to the request as "neither relevant nor proportional to the needs of the case" because "this action contains no legal claims by Plaintiff Moye for 'interference with pension rights.'"[56] Plaintiffs point out in reply that

---

[54]ECF No. 110 at 8.

[55]The court attributes no weight to the fact that Moye testified in deposition that Vogavich was no longer employed at XPO when, in a separate incident, Moye discovered a noose in 2008.

[56]ECF No. 110 at 9.

Moye has alleged his pension was cut in half because he was fired.[57]  Plaintiffs argue the information requested would "provide evidence" and "also identify witnesses."[58]

The court sustains defendant's relevance objection.  Request No. 16 is not relevant on its face, so the burden falls on plaintiffs to prove its relevance.  The connection between other lawsuits against defendant for interference with pension rights and the claims in this case is attenuated at most.  There is no allegation in the amended complaint that has anything to do with pension rights.  Because plaintiffs have failed to prove relevance, their motion to compel is denied as to Request No. 16.

Composition of Defendant's Workforce.  Plaintiffs move to compel defendant's response to McGee's Request No. 13, which, as subsequently limited,[59] sought documents reflecting the composition—by race, gender, age, job category, pay level, and department—of defendant's Kansas City workforce for the years of 2012-2016.  Defendant objects that this request is "a classic fishing expedition" seeking information unrelated to the claims at issue.[60]  Plaintiff asserts the information is "crucial to show whether defendant exhibits a pattern or practice of discrimination,"[61] as plaintiffs alleged in the amended

---

[57]See ECF No. 41 at ¶ 142.

[58]ECF No. 116 at 9.

[59]See ECF No. 116 at 10.

[60]ECF No. 110 at 9.

[61]ECF No. 107 at 7-8.

complaint.  To this argument, defendant responds that plaintiffs have not asserted a disparate-impact claim, nor explained how the composition information would show a pattern or practice of discrimination.[62]

The court finds the requested information relevant.  Although neither side cited a single legal authority to support its position, the court has found caselaw holding that workforce demographics are relevant to proving an employer's pattern and practice of discrimination, which can be used to support claims of individual discrimination.[63]  In *McDonnell Douglas Corp. v. Green,* for example, the Supreme Court ruled that "the (racial) composition of defendant's labor force" may reflect "restrictive or exclusionary practices" relevant to an employee's claim that the reason given by his employer for termination was actually a pretext for discrimination.[64]  Defendant's objection is overruled, and plaintiffs' motion to compel documents showing defendant's workforce demographics is granted.

--------

[62]Defendant's sur-reply further objects that generating racial-composition data is highly burdensome given the claims in the case.  ECF No. 127 at 4.  Because this burden argument was not raised in defendant's response to the motion to compel, and further because it is not support by evidence or detailed argument of the time and expense of responding, it is rejected.

[63]*See, e.g., Thomas v. Hall*, No. 3:10cv171, 2011 WL 4021333, at *5 n.16 (N.D. Fla. Sept. 9, 2011); *Conti v. Am. Axle & Mfg., Inc.*, No. 05-CV-72335, 2006 WL 3500632, at *2 (S.D. Mich. Dec. 4, 2006).

[64]411 U.S. 792, 804-05 & n.19 (1973) (quoting Alfred W. Blumrosen, *Strangers in Paradise: Griggs v. Duke Power Co., and the Concept of Employment Discrimination*, 71 Mich. L. Rev. 59, 91-94 (1972)).

Release Form.  Without citation to a specific discovery request, plaintiffs ask the court to compel defendant to produce "a signed employment records release form."[65]  The parties' subsequent briefing indicates the form plaintiffs presented for defendant's signature would be addressed to the Equal Employment Opportunity Commission ("EEOC") and grant the EEOC the right to release any and all documents concerning defendant.[66]  Defendant argues such a broadly scaled release is unjustified, and suggests plaintiffs make a request to the EEOC under the Freedom of Information Act.  Neither party has submitted a copy of the proposed form for the court's consideration, nor presented legal authority or analysis for its position.  Perhaps more importantly, the record does not reflect that the parties satisfied their D. Kan. Rule 37.2 meet-and-confer obligations with respect to this matter.[67]  The court declines to decide this question on the current record.  Plaintiffs' motion to compel on this basis is denied.[68]

Fees and Costs.  Plaintiffs' motion to compel concludes by requesting an award of attorneys' fees under Rule 37(a)(5).  Specifically, plaintiffs request an award of $1,600 to

---

[65]ECF No. 107 at 8.

[66]See ECF No. 110 at 10; ECF No. 116 at 10.

[67]There is no substantive discussion about the release form in the submitted written exchanges between counsel.

[68]At this point, the court does not go on to address the discovery dispute over defendant's response to Mann's Interrogatory No. 14, which plaintiffs' reply brief indicates is now moot.  In addition, the court does not address Moye's Interrogatory No. 4, which plaintiffs mentioned for the first time in their reply brief.

account for eight hours of attorney time, billed at $200 per hour, incurred in bringing the motion.[69] This request is granted.

Defendant's objections—those made both initially and in response to plaintiffs' motion to compel—were largely evasive, unpersuasive, and unsupported by existing law or facts.  Defendant did not cite a single legal authority to support its positions, nor did defendant offer any evidence or explanation to support its numerous burdensome objections. These practices suggest sanctions are appropriate under Fed. R. Evid. 26(g), in addition to Rule 37(a).  As the court cautioned the parties in the scheduling order,[70] Rule 26(g) mandates the imposition of sanctions if an attorney improperly certifies, by signing a discovery response, that the attorney has conducted "a reasonable inquiry," that the response is consistent with "existing law or by a non-frivolous argument for extending, modifying, or reversing existing law," and that the response is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase

the cost of litigation."

Given the number of document requests and interrogatories at issue, defendant's unsupported positions, and the extensive briefing required to address both of these, $1,600

---

[69]ECF No. 116 at 12 (the court assumes the "$1,800" request is a miscalculation or a typographical error).

[70]ECF No. 10 at 8.

in plaintiffs' attorneys' fees strikes the court as modest.  Defendant is ordered to pay plaintiffs this amount.

Extension of Discovery.  Finally, in their reply brief, plaintiffs include a single sentence asking "the court to reset the deadline for plaintiffs' discovery in this case by three months."  Because this request was made for the first time in a reply brief and, moreover, is not supported by reasoning or citation to legal support, it is denied without prejudice to being reasserted.  Given the extent to which defendant stonewalled in responding to discovery, the court would favorably view a reasserted motion for this relief, but the parties should meet and confer to discuss whether an extension of less than three months might be justified, and the effect any extension would have on other set deadlines.

IT IS THEREFORE ORDERED that defendant's motion to compel is denied as to the two document requests directed to Moye, and granted as to the document request directed to Mann.  Mann is ordered to produce the documents discussed above by **August 1, 2017** (the current discovery end date).

IT IS FURTHER ORDERED that plaintiffs' motion to compel defendant to fully respond to each plaintiff's opening interrogatories, and first requests for production of documents is granted in part and denied in part.  Where defendant has been ordered to supplement its answers or produce documents, it must do so by **August 1, 2017.**  By that same date, defendant shall pay plaintiffs their requested attorneys' fees incurred in bringing the motion.

Dated July 19, 2017, at Kansas City, Kansas.

 s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge